# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

GABRIEL UTRILLA ELIZALDE,

     Petitioner,

v.

YANET HERNANDEZ RIVERON,

     Respondent.

_____/

Case No. 5:18-cv-460-OC-30PRL

FILED

2018 AUG 31  AM 10: 22

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL.
OCALA, FLORIDA

## VERIFIED PETITION FOR THE RETURN OF MINOR CHILDREN PURSUANT TO INTERNATIONAL TREATY AND FEDERAL STATUTE

Petitioner, GABRIEL UTRILLA ELIZALDE ("Petitioner"), by and through undersigned counsel, and in conjunction with a *Motion to Seal* and *Motion for Temporary Injunction and Issuance of Arrest Warrant* filed contemporaneously herewith, petitions this Court for the expedited return to Mexico of his 8-year-old daughter, M.G.U.H., 7-year-old daughter, S.G.U.H., and 5-year-old son, A.G.U.H ("Children")[1]. The Children's mother, Respondent, YANET HERNANDEZ RIVERON ("Respondent"), removed the Children from Mexico and is wrongfully retaining the Children in Ocala, Florida, and pursuant to International Treaty and 42 U.S.C. § 11601 *et seq* ., Petitioner states:

---

[1] Pursuant to Rule 5.2(a), a minor's initials are used in lieu of the full name; the Children's names have been redacted from all exhibits, with birthdays redacted so as to only identify the birth year.

## The Parties

1.      The Children are currently 5, 7, and 8 years old and until their removal, resided in Mexico. Petitioner is the Children's biological father, and Respondent is the Children's biological mother.[2]

2.      Petitioner is a native Mexican and has resided in Mexico his whole life. Petitioner holds a valid Mexican passport and is an entrepreneur still residing in Mexico. Petitioner has a tourist visa, which allows travel to the United States.

3.      Respondent is a native Cuban and resided in Mexico since before the Children were born. Respondent holds a Cuban passport. Respondent took the Children from Mexico for a supposed vacation and has since been wrongfully retaining and concealing the Children in Florida.

## Jurisdiction and Venue

4.      The Court has jurisdiction pursuant to 42 U.S.C. § 11603(a) and ICARA §9003 because this is an action arising under the Hague Convention and involves the wrongful taking and retention by Respondent of the Children whose habitual residence is Mexico.  The Court also has jurisdiction under 28 U.S.C. §1331 because this is a civil action arising under federal law and a treaty of the United States of America.

5.      This Court has personal jurisdiction over Respondent because she is physically present within this district and is wrongfully retaining the Children in this district.

6.      Venue is proper under 42 U.S.C. § 11603(b) and 28 U.S.C. §1391(b)(1)  because the Children are currently located in Ocala, Marion County, which is within the jurisdiction of this Court.

---

[2] *See* Children's Redacted Birth Certificates, **Exhibit A.**

## BACKGROUND

7.      Respondent moved to Mexico from Cuba in 2007 with her then Mexican husband, whom she met in Cuba. Shortly after arriving in Mexico, she left her husband for another Mexican man, with whom she lived and had a child. Before meeting Petitioner, a Mexican court gave custody of the child from Respondent's second relationship to the child's father.

8.      Petitioner and Respondent met in 2007 in Mexico. At that time, Petitioner, who holds a college degree in business administration, operated a successful computer-supply business, which employed 5 people. Respondent, who has no college education, was working in the kitchen of a restaurant.

9.      Petitioner and Respondent began living together in 2008. Their relationship, a civil union, resulted in the birth of the Children in 2008, 2009, and 2012. Petitioner and Respondent jointly exercised parental and custodial rights.

10.     Since their births, Mexico has been the Children's habitual residence. The family resided in an apartment owned outright by Petitioner. The Children attended Mexican schools and participated in recreational activities, visiting parks and the zoo. M.G.U.H. took ballet classes. Petitioner and the Children interacted on a daily basis with Petitioner's large extended family, some of whom live in the same apartment building.[3]

11.     After they began having children together, Respondent's violent and aggressive personality came to light. Respondent did not have much patience when dealing with the Children. She was verbally and physically abusive towards the Children and Petitioner. Many of Petitioner's family members witnessed Respondent's angry outbursts.

---

[3] In addition to Petitioner, the Children have the following family in Mexico: their paternal grandmother, 5 uncles, 5 great uncles, and 12 cousins. The family is tightly knit and see each other often. Petitioner's brothers are college-educated and either own their own businesses or are employed.

12.     On January 15, 2015, Petitioner fell from a ladder in his home and broke his foot and tibia. He underwent 3 surgeries in 2015 and 2016, including having several metal screws and metal rods inserted into his leg, and was largely immobile until late 2016, during which time his business suffered.

13.     In June 2016, Respondent told Petitioner she wanted to take the Children to the United States to visit her family while the Children were on summer break from school. The visit was to last less than a month so that the Children could return to school in Mexico when classes began. Respondent persuaded Petitioner to sign a legal document giving her permission to travel with the Children outside the country for a limited time period. At the time he signed this document, Petitioner had no concerns about Respondent leaving him or abducting the Children. Petitioner did not authorize Respondent to permanently remove the Children from Mexico.

14.     On July 28, 2016, Respondent flew to Florida with the Children. She was apparently allowed to enter without a visa given her Cuban nationality.

15.     The last time Respondent spoke to the Children was Aug. 11, 2016, the birthday of M.G.U.H. At the time, Respondent and the Children were residing at the home of Respondent's mother in Hialeah, Florida. During this conversation, Respondent told Petitioner that she had met another man – a mere two weeks after arriving in the United States – and that he needed to stop calling. Stunned and disheartened, Petitioner told Respondent she needed to bring the Children home.

16.     Respondent then blocked Petitioner's telephone number. Petitioner tried to communicate with Respondent and his Children at the home of Respondent's mother, but was advised by Respondent's mother that Respondent and the Children no longer resided there. When Petitioner asked Respondent's mother to advise him of the Children's whereabouts, she

refused to help him. Petitioner wanted to come to the United States to find the Children but did not know where to look.

17.    Following this incident, Petitioner contacted local law enforcement for assistance in locating the Children, but they were unable to assist him.

18.    Based upon the foregoing, and as further detailed below, Respondent knowingly and deliberately transported the Children into the United States in contravention of the limited authorization and applicable law. Petitioner has vigilantly and diligently pursued the return of his Children ever since. On July 20, 2017, Petitioner filed a Hague application.

19.    Although Petitioner has neither seen nor heard from his Children or Respondent since August 11, 2016, the United States Department of State ("USDS") confirms Respondent is currently residing in Marion County, Florida. The USDS was unable to determine the location of the Children until they were registered for school in Marion County, which was just a few weeks before the filing of this Petition. Petitioner believes another man is funding Respondent's residence and active concealment of the Children.

20.    The USDS thereafter contacted the undersigned regarding possible representation of Petitioner. This underlying Petition is the result.

21.    Petitioner intends to travel from Mexico and arrive in Florida before any Court proceeding related to this Petition. Petitioner has secured replacement visas and travel documents for the Children to facilitate their return to Mexico. Petitioner still lives in the same home where the Children were born and resided and is prepared for them to move back in. Petitioner is presently employed with an accounting firm and is in the process of re-establishing his old computer business.

22.     Due to the gravity of the situation, as well as Petitioner's desire to have the Children resume their education in Mexico in the fall, Petitioner requests an expedited hearing in accordance with the expedited proceedings contemplated under both the Convention and Florida law.

**RESPONDENT'S DEMONSTRATED FLIGHT RISK AND
CONTEMPORANEOUS MOTION TO SEAL CASE AND
FOR TEMPORARY RESTRAINING ORDER AND ARREST OF CHILDREN**

23.     Based on the facts as set forth above and in more detail below, there is a grave and substantial likelihood that Respondent will continue to violate international law and further violate Petitioner's parental and custody rights with respect to the Children. In light of Respondent's past and present actions, to include prior flight and continued concealment of the Children, Respondent is a significant, and otherwise confirmed, flight risk.

24.     Due to Respondent's demonstrated propensities and flight risk, Petitioner has filed this Verified Petition in conjunction with a contemporaneous *Motion to Seal* and *Ex Parte Motion for Temporary Injunction and Application for Arrest Warrant and Temporary Custody*, under which, and together with this Verified Petition, Petitioner respectfully requests that this Court enter an order which provides for the following:

    a. Order all filings identified in the *Motion to Seal,* to include this Verified Petition, remain under seal pending service upon Respondent as set forth in the motion and further below;

    b. Upon a finding that Petitioner has made a *prima facie* case for his *Ex Parte Motion for Temporary Restraining Order and Application for Arrest Warrant and for Temporary Custody,* and that Respondent presents a flight risk if given advanced notice of these proceedings, issue a warrant directing the U.S. Marshal Service or other law enforcement authority to arrest the Children, remove them from Respondent's control and thereafter serve Respondent with notice of these proceedings;

    c. Grant temporary physical custody of the Children to Petitioner;

    d.   Issue an order requiring Respondent to (1) remain within the jurisdiction of this Court pending resolution of this matter and (2) surrender each of her and the Children's passports, visas and other travel documentation, if any, to the Court and (3) order Respondent to appear before the Court to show cause as to why the Children should not be returned to Mexico in the company of Petitioner;

    e.   In the event Respondent opposes the Petition, set an expedited final hearing on Petitioner's Verified Petition for Return; and

    f.   Order that the Children be returned forthwith to Mexico in the company of their father, Petitioner.

**THE HAGUE CONVENTION and**
**THE INTERNATIONAL CHILD ABDUCTION REMEDIES ACT**

25.    This Petition is brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"),[4] done at The Hague on October 25, 1980, and 42 U.S.C §11603(b), the International Child Abduction Remedies Act ("ICARA"). The United States of America assisted in drafting the Convention and became a signatory to the Convention in 1981. ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his rights in exigent circumstances. *See Distler v. Distler*, 26 F. Supp. 2d 723, 727 (D.N.J. 1998).

26.    Petitioner, a Mexican citizen, seeks the return of his minor Children to Mexico which has been their habitual residence since birth. Respondent has been, and is currently, wrongfully retaining the Children in the United States of America in violation of The Hague Convention and ICARA.

27.    This is not a custody case. Rather, the objectives of the Hague Convention are to (i) secure the prompt return of a child wrongfully removed or retained in any Contracting State, and (ii) ensure that rights of custody and access under the laws of one Contracting State are effectively respected in other Contracting States. Accordingly, the purpose of a Hague petition is

---

[4] *See Hague Convention*, **Exhibit B**.

to effect the return of an abducted or wrongfully retained child/children to their country of habitual residence so that the country of habitual residence decides issues of permanent custody.

28.     Mexico and the United States are both signatories to the Convention and are therefore Contracting States. *See* United States Department of State's Hague Abduction Convention Country List, available at: https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited July 30, 2018).

29.     The Court must return the Children to Mexico because, under the Convention and ICARA, a preponderance of the evidence establishes that:

    a.  Mexico was the Children's birth place and habitual residence until July 28, 2015 when the Respondent took the Children from Mexico and thereafter transported them to the United States where she has continued to wrongfully retain them;

    b.  Petitioner was exercising his Mexican parental and custody rights at the time Respondent wrongfully took from Mexico and thereafter wrongfully retained the Children in the United States;

    c.  The Children are under 16 years old; and

    d.  None of the narrow exceptions to mandatory return under the Convention apply. Mexico is the appropriate country to make all determinations regarding custody of, and access to, Petitioner's Children.

### COUNT I – RETURN OF THE CHILD UNDER THE HAGUE CONVENTION AND ICARA

30.     Petitioner re-alleges the allegations contained in paragraphs 1–29 as if fully set forth herein.

31.     Pursuant to the Convention, when a child has been wrongfully retained, the court in the Contracting State in which the petition is filed "**shall** order the return of the child forthwith" to the child's state of habitual residence, subject to limited exceptions. *See* Convention, art. 1, 3, 4, 12–13, and 20 (emphasis added).

32.    In this case, Respondent's wrongful retention of the Children in the United States is in violation of the Convention and ICARA because (i) prior to the wrongful retention, the Children were habitual residents of Mexico; (ii) the retention of the Children in the United States of America is in breach of Petitioner's rights of custody to the Children under Mexico law; (iii) Petitioner was exercising his rights of custody to the Children at the time of the taking and subsequent wrongful retention; and (iv) the Children are under 16 years of age. *See* Convention, arts. 3, 4.

33.    As set forth above, Mexico was the Children's habitual residence since birth and where the Children attended school, and engaged in both academic and extra-curricular activities under Petitioner's parental custody and care; in addition to Petitioner, the Children have established relationships with extended family and friends residing in Mexico.

34.    Petitioner has custody rights to the Children pursuant to Mexican law and pursuant to the Hague Convention. *See* Civil Code for the Federal District, Ch. X, **Exhibit C**. Petitioner was exercising these rights at the time the Children were taken and thereafter wrongfully retained in the United States of America. Further, there is no Mexican court order terminating Petitioner's rights of custody and/or otherwise authorizing Respondent's continued retention of the Children in the United States of America or elsewhere.

35.    In her efforts to abduct and conceal the Children, Respondent illegally kept the Children in the United States in express violation of Petitioner's limited travel authorization for the Children and international law.

## PROVISIONAL REMEDIES

36.    Pursuant to the Convention, "[i]n furtherance of the objectives of…the Convention..[the Court] may take or cause to be taken measures under Federal or State law, as

appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604.

37.     Pursuant to ICARA § 11604, and as otherwise set forth in Petitioner's *Motion to Seal* and *Ex Parte Motion for Temporary Injunction and Application for Arrest Warrant* filed contemporaneously herewith, " [n]o court exercising jurisdiction [in a proceeding for the return of a child]. . . may . . . order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C. § 11604.

38.     In Florida, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Chapter 61, Part II of the Florida Statutes, governs the resolution of both domestic and international child custody disputes. Section 61.534 authorizes a court, upon finding that the child is "likely to imminently suffer serious physical harm or removal from this state," to issue a warrant to take physical custody of the child. § 61.534(2), Fla. Stat.  Sub-section (6) provides that the court "may impose conditions upon placement of a child to ensure the appearance of the child and the child's custodian."

39.     As set forth herein, the Children are "likely to imminently suffer . . . removal from this state," and this Court is therefore authorized to issue a warrant to prevent the Children's removal from this state.

40.     The information specified in section 61.522, Florida Statutes, is provided below in an abundance of caution, in the event that this Court interprets these provisions to be applicable requirements of State law required to be satisfied by 42 U.S.C. § 11604(b). As it pertains to this instant matter:

41.     The Children are presently located, upon information and belief, in Ocala, Florida with the Respondent, without the Petitioner's consent.

42.     The Children habitually resided in Mexico under the joint parental care and custody of both Petitioner and Respondent since birth and through the date Respondent took the Children.

43.     Petitioner does not have information of any custody proceeding concerning the Children pending in any other court of this or any other State, other than the information provided in this Petition.

44.     Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of Petitioner's Children or who claims to have rights of parental responsibility or legal custody or physical custody of, or visitation or parenting time with, the Children.

45.     Under the circumstances, this Court has the authority to issue a Warrant of Arrest for the Children as requested in Petitioner's contemporaneously filed *Ex Parte Motion for Temporary Restraining Order and Application for Arrest Warrant* and to otherwise direct the United States Marshal Service to serve this Petition on the Respondent *after the Children are secured* and to command Respondent to appear before this Court immediately, so that the provisions of 42 U.S.C. § 11604 can be met.

46.     Petitioner will come to Florida and be available to take immediate temporary custody of the Children upon order by this Court. Petitioner requests that the Children be placed with Petitioner pending the final evidentiary hearing in this Court because Respondent's actions to date demonstrate Respondent represents a significant flight risk; an order prohibiting her from fleeing the jurisdiction with the Children will be insufficient.

47.     In addition, and pending the final evidentiary hearing in this Court, it is requested that this Court issue an immediate order prohibiting the removal of the Children from the

11

jurisdiction of this Court, taking into safe-keeping all of the Respondent's and Children's travel documents, and setting an expedited hearing on this Petition.

48.    Pursuant to 42 U.S.C. § 11603(c), Respondent will be given notice of any *non-ex parte* hearing consistent with §§ 61.518 and 61.532, Florida Statutes.

49.    Based upon the foregoing, Petitioner respectfully requests this Court grant the relief requested herein and by Petitioner's corresponding and contemporaneously filed motions.

## ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND ICARA 11607

50.    Petitioner has incurred expenses as a result of the wrongful retention of the minor Children by the Respondent. Petitioner will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful retention.

51.    Petitioner respectfully requests that this Court award all legal costs and fees incurred to date as required by ICARA § 11607, reserving jurisdiction over further expenses.

## RESPONDENT'S DEMONSTRATED FLIGHT RISK AND THE NEED FOR TEMPORARY RESTRAINING ORDER AND ARREST OF CHILDREN

52.    Based on the facts as set forth above and in more detail below, there is a grave and substantial likelihood that Respondent will continue to violate international law and Petitioner's parental and custodial rights.

53.    The foregoing, coupled with Respondent's deliberate efforts to alienate the Children from Petitioner and otherwise sever their relationship, demonstrates Respondent has absolutely no intention of voluntarily returning the Children to Mexico, let alone complying with a court order. The Respondent's past and present actions therefore render Respondent a significant, and confirmed, flight risk.

54.     Due to the Respondent's demonstrated propensities and flight risk, Petitioner has filed this Verified Petition in conjunction with Petitioner's contemporaneous *Motion and Memorandum of Law for Entry of Temporary Restraining Order Pursuant to Hague Convention*.

WHEREFORE, Petitioner respectfully requests that the Court enter an order to the following effect:

a. Issue an order requiring Respondent to (1) remain within the jurisdiction of this Court pending resolution of this matter and (2) surrender each of her and the Children's passports, visas and other travel documentation, if any, to the Court and (3) order Respondent to appear and show cause as to why the Children should not be returned to Mexico in the company of Petitioner;

b. Set an expedited final hearing on Petitioner's Verified Petition for Return; and

c. Order that the Children be returned forthwith to Mexico in the company of their father, Petitioner.


### Declaration Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746(1)


I declare under penalty of perjury under the laws of the United States of America that I have reviewed this Verified Petition in its original and translated form and that the foregoing is true and correct.

Executed on this 29th day of August, 2018.

_____
GABRIEL UTRILLA ELIZALDE


[Attorney signature next page]

13

Scanned by CamScanner

/s/ Daniel Hernandez
Daniel Hernandez, Esquire
Florida Bar Number 176834
Janelle A. Weber, Esquire
Florida Bar Number 017630
SHUTTS & BOWEN LLP
4301 W. Boy Scout Blvd., Ste. 300
Tampa, FL  33607
Telephone:  (813) 229-8900
Facsimile:  (813) 229-8901
Email: dhernandez@shutts.com
Email: jweber@shutts.com
Attorneys for Plaintiff

*Attorneys for Petitioner*

# Exhibit A

25756557

**CDMX**
CIUDAD DE MÉXICO

## ACTA DE NACIMIENTO

| ENTIDAD | DELEGACION | JUZGADO | LIBRO | ACTA | AÑO | CLASE | FECHA DE REGISTRO |
|---------|------------|---------|-------|------|-----|-------|-------------------|
| 9 | 6 | OC | -- | 3439 | 2009 | NA | 2009-07-17 |

**REGISTRADO**

Nombre M████ G█████ U████ H████        Género  FEMENINO

Fue Presentado(a)   VIVA

Fecha de Nacimiento  ████████ 2008

Lugar de Nacimiento  SUR 101 - 305 HEROES DE CHURUBUSCO IZTAPALAPA DISTRITO FEDERAL

**PADRES**

Nombre del Padre   GABRIEL UTRILLA ELIZALDE          Edad  43

Nacionalidad   MEXICANA

Nombre de la Madre  YANET HERNANDEZ RIVERON          Edad  28

Nacionalidad   CUBANA

**ABUELOS**

Abuelo Paterno  ARTURO UTRILLA GOMEZ

Abuela Paterna  GUADALUPE ELIZALDE CORONADO

Abuelo Materno  -------- --------

Abuela Materna  -------- --------

La presente certificación es un extracto del acta cuyos datos
arriba se precisan y que se expide firmada electrónicamente
de manera autógrafa con fundamento en los artículos 48
del Código Civil para el Distrito Federal y 13 fracción VII
del Reglamento del Registro Civil del Distrito Federal en
esta Ciudad de México.

GOBIERNO DEL
DISTRITO FEDERAL

DIRECCION GENERAL DEL
REGISTRO CIVIL
CERTIFICACIONES

**FIRMA**

El C. Juez Central del Registro Civil del Distrito Federal A    18 DE JULIO DEL AÑO 2017

tgJhU1Gtpkwap1Zaf9cLqKW+pIsYV/LO9dt0m7MZf3++1wYrLLpRjj/S/6QDJWc6sKrQh25G/8/
c6SrwuPxsy9f4gJZ0XL+NVBSS+5p7gCqT0vnnowt7XALWgsaGj19hL3kNQmHbV87DIH1E+84MNc
mDSshGZexzWbaZoQV6Y=

**LIC. ANTONIO PADIERNA LUNA**

Para verificar la validez del contenido de esta copia visite página en Internet :
http://www.consejeria.df.gob.mx/rcivil        47158460

25756565

47158481

# CDMX
CIUDAD DE MÉXICO

## ACTA DE NACIMIENTO

| ENTIDAD | DELEGACION | JUZGADO | LIBRO | ACTA | AÑO | CLASE | FECHA DE REGISTRO |
|---|---|---|---|---|---|---|---|
| 9 | 39 | -- | 99 | 2010 | NA | 2010-01-11 |

**REGISTRADO**

Nombre  S████ G████ U████ H████                    Género   FEMENINO

Fue Presentado(a)   VIVA

Fecha de Nacimiento  ████████ 2009

Lugar de Nacimiento   CALZADA DE LA VIGA 1529, UNIDAD MODELO IZTAPALAPA DISTRITO FEDERAL

**PADRES**

Nombre del Padre   GABRIEL UTRILLA ELIZALDE                    Edad  43

Nacionalidad   MEXICANA

Nombre de la Madre  YANET HERNANDEZ RIVERON                    Edad  28

Nacionalidad   CUBANA

**ABUELOS**

Abuelo Paterno   ARTURO UTRILLA GOMEZ

Abuela Paterna   GUADALUPE ELIZALDE CORONADO

Abuelo Materno   ------------------------

Abuela Materna   ------------------------

La presente certificación es un extracto del acta cuyos datos arriba se precisan y que se expide firmada electrónicamente de manera autógrafa con fundamento en los artículos 48 del Código Civil para el Distrito Federal y 13 fracción VII del Reglamento del Registro Civil del Distrito Federal en esta Ciudad de México.

El C. Juez Central del Registro Civil del Distrito Federal A        15 DE JULIO DEL AÑO 2017

GOBIERNO DEL DISTRITO FEDERAL

DIRECCION GENERAL DEL REGISTRO CIVIL CERTIFICACIONES

**FIRMA**

siyu2ZWqQDGeWkuH0UEqmkQuSZ3adpQu8SYm3rsRyr1ln1eKEVFJ66tVRuiAuqC8gHZySatWHed
aZe0E0uZI4SrAdkuJzoKmDnZ3KUeNDLCfjBWjMH2IAyTemCBDPhfUT/fEF2UCupsA77G9YR4InV
45pqOz8bzXschVZVz7H=

## LIC. ANTONIO PADIERNA LUNA

Para verificar la validez del contenido de esta copia visite pagina en Internet
http://www.consejeria.df.gob.mx/rcivil

47158461

Birth Certifcate

| Entity | Delegation | Court | Book | Certificate | Year | Class | Resgistration | Date |
|---|---|---|---|---|---|---|---|---|
| 9 | 9 | 39 | ... | 99 | 2010 | NA | | 2010-01-11 |

Name: S█ G█████ U███ H█████                    Gender: Female

Was presented: alive                                        Hour: 16:44

*Corrected by: Janelle Weber, Esq.*

Date of birth █████ 2017 9                    Appeared: father and mother

Place of birth: calzada de la vida 1529, Unidad modelo Iztapalapa Distrito
federl

Father's name: Gabriel Utrilla Elizalde            Age : 43 years

Nacionality: Mexican                            Ocupation: Merchant

Adress: Belisario Dominguez Manzana 131, Lote 15 Col. Guadalupe del Moral,
Iztapalapa Distrito Federal

Mothers name: Yanet Hernandez Riveron            Age:28 years

Nacionality: Cuban                                Ocupation: Home

Adress: Belisario Dominguez Manzana 131, Lote 15 Col. Guadalupe del Moral,
Iztapalapa Distrito Federal

Paternal grandfather: Arturo Utrilla Gomez  Nacionality: Mexican     deceased

Paternal grandmother: Guadalupe Elizalde Coronado  Nacionality: Mexican

Maternal grandfather:..........    Nacionality: ......

Maternal grandmother: .......    Nacionality: ......

**ESTADOS UNIDOS MEXICANOS**

25756578

# CDMX
CIUDAD DE MÉXICO

## ACTA DE NACIMIENTO

| ENTIDAD | DELEGACION | JUZGADO | LIBRO | ACTA | AÑO | CLASE | FECHA DE REGISTRO |
|---------|-----------|---------|-------|------|-----|-------|-------------------|
| 9 | 9 | 26 | . | 3354 | 2013 | NA | 2013-05-02 |

### REGISTRADO

Nombre A▮▮▮ G▮▮▮ U▮▮▮ H▮▮▮          Género  MASCULINO

Fue Presentado(a)  VIVO

Fecha de Nacimiento  ▮▮▮▮▮ 2012

Lugar de Nacimiento  FRANCISCO I. MADERO 452, PROGRESISTA, IZTAPALAPA DISTRITO FEDERAL

### PADRES

Nombre del Padre  GABRIEL UTRILLA ELIZALDE          Edad  47

Nacionalidad  MEXICANA

Nombre de la Madre  YANET HERNANDEZ RIVERON          Edad  31

Nacionalidad  CUBANA

### ABUELOS

Abuelo Paterno  ARTURO UTRILLA GOMEZ

Abuela Paterna  GUADALUPE ELIZALDE CORONADO

Abuelo Materno  -------------

Abuela Materna  -------------

La presente certificación es un extracto del acta cuyos datos arriba se precisan y que se expide firmada electrónicamente de manera autógrafa con fundamento en los artículos 48 del Código Civil para el Distrito Federal y 13 fracción VII del Reglamento del Registro Civil del Distrito Federal en esta Ciudad de México.

GOBIERNO DEL DISTRITO FEDERAL

DIRECCION GENERAL DEL REGISTRO CIVIL CERTIFICACIONES

FIRMA

El C. Juez Central del Registro Civil del Distrito Federal A          15 DE JULIO DEL AÑO 2017

FGepPXdYN1fRIsm/I/sE57sLzqSbKaS1dAyZCVwr39T2jAXKkmAP2RhDeqIIjpti1re1MZiDqyS
Uznmw2wN+NHYaAplTbPFxH8yx2Yx6tMCqApfyQU2378bDdnNOcY4IosCE26t2bw9HmaoAwKCH/J
Rxz+kV1YQ1B+bf75wNg=

## LIC. ANTONIO PADIERNA LUNA

47158462

Birth Certifcate

| Entity | Delegation | Court | Book | Certificate | Year | Class | Resgistration | Date |
|--------|-----------|-------|------|-------------|------|-------|---------------|------|
| 9 | 9 | 26 | ... | 3354 | 2013 | NA | | 2013-05-02 |

Name: A█████ G█████ U████ H█████████

Was presented: alive

Date of birth : ████████ 2012

Place of birth: Francisco I. Madero 452, progresista, Iztapalapa, Distrito Federal

Father's name: Gabriel Utrilla Elizalde          Age : 47

Nacionality: Mexican

Mothers name: Yanet Hernandez Riveron          Age:31

Nacionality: Cuban

Paternal grandfather: Arturo Utrilla Gomez

Paternal grandmother: Guadalupe Elizalde Coronado

Maternal grandfather:..........

Maternal grandmother: .......

# Exhibit B



**HCCH**
HAGUE CONFERENCE ON
PRIVATE INTERNATIONAL LAW
CONFÉRENCE DE LA HAYE
DE DROIT INTERNATIONAL PRIVÉ

### 28. CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION[1]

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

CHAPTER I – SCOPE OF THE CONVENTION

#### Article 1

The objects of the present Convention are –

*a)*  to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

*b)*  to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

#### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

#### Article 3

The removal or the retention of a child is to be considered wrongful where –

*a)*  it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

*b)*  at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction* (ISBN 90 12 03616 X, 481 pp.).

## Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

## Article 5

For the purposes of this Convention –
a)    "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b)    "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

### CHAPTER II – CENTRAL AUTHORITIES

## Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.
Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

## Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.
In particular, either directly or through any intermediary, they shall take all appropriate measures –
a)    to discover the whereabouts of a child who has been wrongfully removed or retained;
b)    to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;
c)    to secure the voluntary return of the child or to bring about an amicable resolution of the issues;
d)    to exchange, where desirable, information relating to the social background of the child;
e)    to provide information of a general character as to the law of their State in connection with the application of the Convention;
f)    to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;
g)    where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;
h)    to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;
i)    to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

### CHAPTER III – RETURN OF CHILDREN

## Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.
The application shall contain –

a) information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;
b) where available, the date of birth of the child;
c) the grounds on which the applicant's claim for return of the child is based;
d) all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

e) an authenticated copy of any relevant decision or agreement;
f) a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;
g) any other relevant document.

## Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

## Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

## Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

## Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

## Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

a) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

*b)*     there is a grave risk that his or her return would expose the child to physical or psychological harm
         or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the
child objects to being returned and has attained an age and degree of maturity at which it is appropriate
to take account of its views.
In considering the circumstances referred to in this Article, the judicial and administrative authorities shall
take into account the information relating to the social background of the child provided by the Central
Authority or other competent authority of the child's habitual residence.


## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3,
the judicial or administrative authorities of the requested State may take notice directly of the law of, and
of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of
the child, without recourse to the specific procedures for the proof of that law or for the recognition of
foreign decisions which would otherwise be applicable.


## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for
the return of the child, request that the applicant obtain from the authorities of the State of the habitual
residence of the child a decision or other determination that the removal or retention was wrongful within
the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in
that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants
to obtain such a decision or determination.


## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or
administrative authorities of the Contracting State to which the child has been removed or in which it has
been retained shall not decide on the merits of rights of custody until it has been determined that the
child is not to be returned under this Convention or unless an application under this Convention is not
lodged within a reasonable time following receipt of the notice.


## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the
requested State shall not be a ground for refusing to return a child under this Convention, but the judicial
or administrative authorities of the requested State may take account of the reasons for that decision in
applying this Convention.


## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the
return of the child at any time.


## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a
determination on the merits of any custody issue.

## Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

### CHAPTER IV – RIGHTS OF ACCESS

## Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

### CHAPTER V – GENERAL PROVISIONS

## Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

## Article 23

No legalisation or similar formality may be required in the context of this Convention.

## Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

## Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

a)    any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

b)    any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

### Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

### Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

### Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

### Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

### Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

### CHAPTER VI – FINAL CLAUSES

### Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

### Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

## Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

## Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

## Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

## Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –

(1) for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;

(2) for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.


## Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


## Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –

(1) the signatures and ratifications, acceptances and approvals referred to in Article 37;

(2) the accessions referred to in Article 38;

(3) the date on which the Convention enters into force in accordance with Article 43;

(4) the extensions referred to in Article 39;

(5) the declarations referred to in Articles 38 and 40;

(6) the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;

(7) the denunciations referred to in Article 44.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.

# Exhibit C

# CIVIL CODE FOR THE FEDERAL DISTRICT

## CHAPTER X
### Divorce

Article 283.- The divorce decree shall determine the situation of minor children, for which purpose it must contain the following provisions:

I.-Everything regarding the rights and duties inherent to patria potestas, the loss, suspension or limitation thereof; the care and custody, as well as the parenting obligations and the right of children to spend time with both parents.

II.-All necessary measures to protect children against acts of family violence or any other circumstance harming or jeopardizing their harmonic and full development.

III.-The necessary measures to guarantee interaction of the children with their parents, which must be limited or suspended only when there is a risk for the minors.

IV.- Taking into consideration, as the case may be, the data gathered under the terms of article 282 of this Code, the Family Judge shall determine whatever may be applicable to the division of assets and take the necessary precautions to ensure the obligations that may be pending between the spouses or in connection with the children. The former spouses shall have the obligation to contribute, in proportion to their assets and income, to the payment of alimony in favor of the children.

V.- The security measures, follow-up and the psychotherapies needed to correct the acts of family violence under the terms of the Law for Assistance and Prevention of Family Violence and the Law for Women's Access to a Life Free of Violence for the Federal District. Such measures may be suspended or amended under the terms contemplated by article 94 of the Code of Civil Procedures for the Federal District.

VI.- For the case of incapacitated adults subject to the guardianship of one of the former spouses, the measures referred to in this article for their protection must be set forth in the divorce decree.

VII.- In case of disagreement, the Family Judge shall resolve in the divorce decree the enforceability of the compensation contemplated in article 267 paragraph VI, considering the particular circumstances of each case.

VIII.- The others that may be necessary to guarantee the well-being, development, protection and interest of the minor children.

For the provisions in this article, ex officio or upon request of an interested party, during the procedure the Judge shall gather the necessary elements and he/she must hear the Public Prosecutor, both parents and the minor children.

Article 283 Bis.- Should the parents have agreed upon the shared care and custody under the terms of the provisions in paragraph II, section B of article 282, the Judge, in the

Luis Rey Ballesteros López
Perito Traductor Autorizado por el H.
Tribunal Superior de Justicia del D.F.
Certified Translator

1

divorce decree, must guarantee that the divorcing spouses fulfill the parenting obligations, which should not involve a risk in the day-to-day life of the children.

Article 285. The father and the mother, even if they lose the patria potestas, remain subject to all obligations they have with their children.

### EIGHTH TITLE
### Patria potestas

### CHAPTER I
### Effects of the patria potestas on the person of the children.

Article 411. Mutual respect and consideration must prevail in the relation between ascendants and descendants, whichever their status, age and condition may be.

The individuals holding the patria potestas are responsible for keeping a harmonic relationship with their minor children, whether or not they live under the same roof.

Article 412. Non-emancipated minor children are under the patria potestas as long as one of the ascendants who must exercise it pursuant to the Law exists.

Article 413.- The patria potestas is exercised over the person and the assets of the children. Its exercise is subject, regarding the custody and education of the minor children, to the modes determined by the resolutions that may be rendered, according to the Law for the Treatment of Juvenile Offenders for the Federal District in Common Manner and for the entire Republic in Federal Matters.

Article 414. The patria potestas over the children is exercised by the parents. When one of them ceases to exercise it due to any circumstance, the exercise thereof shall correspond to the other one.

In the absence of both parents or due to any other circumstance contemplated in this legal code, the patria potestas over the minor children shall be exercised by the second-degree ascendants, in the order determined by the family judge, taking into account the circumstances of the case.

Article 414 Bis.- The individuals exercising the patria potestas or the temporary or final care and custody over a minor child, whether or not they live in the same domicile, must fulfill the following parenting obligations:

I.- Ensuring the physical, psychological and sexual security;

II.- Promoting appropriate eating, personal hygiene and physical development habits, as well as supporting skills for intellectual and school development;

III.- Showing respectful demonstrations of affection that meet the acceptance of the minor child, and

IV.- Determining limits and standards of conduct, preserving the higher interest of the child.

Luis Rey Ballesteros López
Perito Traductor Autorizado por el H.
Tribunal Superior de Justicia del D.F.
Certified Translator

SECRETARIA DE RELACIONES EXTERIORES
DIRECCION GENERAL DE PROTE...

2

The unjustified, permanent and systematic failure to perform the above-mentioned activities shall be considered a nonfulfillment of the parenting obligations. This shall be assessed by the Judge in the cases of suspension of the patria potestas, determination of temporary and final care and custody and the visitation regime.

The fact that any of the parents has long workdays shall not be considered a nonfulfillment of these obligations.

Article 416.- In case of separation of the individuals exercising the patria potestas, both of them must continue fulfilling their obligations and may agree upon the terms for the exercise thereof, particularly regarding the care and custody of the minor children. In case of disagreement, the Family Judge shall resolve whatever may be applicable, after the prior procedure determined by the Sixteenth Title of the Code of Civil Procedures.

Considering the higher interests of the minor, the latter shall remain under the care and attention of one of them. The other shall be bound to cooperate in his/her feeding and parenting, preserving the right of visitation with the minor, according to the options contemplated in the agreement or court order.

Article 416 Bis.- The children who are under the patria potestas of their parents are entitled to interact with both of them, even if they do not live under the same roof.

The personal relations between the minor child and his/her ascendants may not be prevented without a fair reason. In case of opposition, upon request of any of them, the Family Judge shall resolve whatever may be applicable, prior hearing of the minor child, considering his/her higher interests.

For the above cases and only through a court order, this right must be limited or suspended, considering the repeated nonfulfillment of the parenting obligations or the danger for the health and physical, psychological or sexual integrity of the children.

Article 416 Ter.- For the purposes of this Code, higher interests of the child shall be understood as the priority that must be given to the rights of children over the rights of any other person, in order to guarantee, among others, the following aspects:

I.- Access to physical and mental health, food and education promoting their personal development;

II.- Establishment of an environment of respect, acceptance and affection, free of any type of family violence;

III.- Development of the personality structure, with an adequate self-esteem, free of overprotection and punitive excesses;

IV.- Promotion of personal and social responsibility, as well as the decision-making by the minor child in accordance with his/her age and psychoemotional maturity; and

V.- The other rights in favor of the children recognized by other applicable laws and treaties.

ARTICLE 417.- In case of disagreement on visitation or the change of care and custody in the dispute, or in the respective incident, the minor children must be heard.

3

In order to have the minor child duly heard regardless of his/her age, he/she must be assisted at the hearing by the juvenile case worker designated for such purpose by the Integral Family Development System of the Federal District.

In the event the juvenile case worker does not attend the hearing, considering the higher interest of the minor children, it shall be at the discretion of the Judge to carry out or not the hearing, once the latter verifies if the free and spontaneous communication with the minor is feasible.

Article 417 Bis.- Juvenile case worker shall mean the professional in psychology, social work or pedagogy, exclusively, assigned to the Integral Family Development System of the Federal District or another institution authorized by the latter, who assists the minor child, only in order to facilitate his/her free and spontaneous communication and to provide him/her with psychological and emotional protection at the sessions where the latter is privately heard by the judge, without the presence of the parents and this shall not involve their participation at the hearing.

Such case worker may request up to two interviews prior to hearing the minor child, whereas the parent entrusted with the care and custody over the minor shall be under the obligation to fulfill the requirements from the case worker of the minor child.

Article 418. The obligations, powers and restrictions established for guardians shall be applied to the relative who because of any circumstance has the custody of a minor child. Whoever keeps the patria potestas shall have the obligation to contribute with the relative who has custody of the minor in all his/her duties, retaining his/her visitation and surveillance rights.

The foregoing custody may end due to the decision of the relative who performs it, by the individual(s) exercising the patria potestas or through a court order.

Article 419. The patria potestas over the adopted child shall be exercised only by the individuals who adopt him/her.

Article 420. Only due the lack or impediment of all those preferable eligible persons, the next persons in the order established in the preceding articles shall assume exercise of the patria potestas. If only one of the two persons to whom it may correspond to exercise the patria potestas is absent, the remaining person shall continue to exercise such right.

Article 421. As long as the child is under patria potestas, he/she may not leave the home of the individuals who exercise the same, without their permission or without a resolution of the competent authority.

Article 422. The individuals who have the minor child under their patria potestas or custody are under the obligation to give him/her an appropriate education.

When the Local Guardianship Councils or any administrative authority learns that such individuals do not fulfill the above-mentioned obligation, the former shall notify the Public Prosecutor's Office for any relevant procedures it may follow.

Article 423. For the purposes of the preceding article, the individuals exercising the patria potestas or who have minor children under their custody are empowered to discipline them and under the obligation to observe a proper conduct that sets a good example.

Luis Rey Ballesteros López
Perito Traductor Autorizado por el H.
Tribunal Superior de Justicia del D.F.
Certified Translator

4

The authority to discipline does not imply inflicting upon the minor child forceful acts attacking his/her physical or psychical integrity under the terms of the provisions in article 323 ter of this Code.

Article 424. The individual subject to the patria potestas cannot appear in a lawsuit or contract any obligation whatsoever without the express consent of the individual(s) exercising such right. In case of irrational dissent, the judge shall resolve.

## CHAPTER III
### Loss, suspension, limitation y termination of patria potestas

Article 443. The patria potestas ends:

I. With the demise of the individual exercising it, if there is no other individual upon whom it may fall;

II. With the emancipation derived from marriage;

III. Due to the legal age of the child.

IV. With the adoption of the child.

V. When the individual exercising the patria potestas over a minor child delivers him/her to a lawfully incorporated public or private social welfare institution to be placed for adoption pursuant to the provisions in article 901 bis of the Code of Civil Procedures.

Article 444.- The patria potestas is lost through a court order in the following assumptions:

I. When the individual exercising it is expressly sentenced to the loss of such right.

II. In divorce cases, considering the provisions in article 283 of this Code.

III.- In the cases of family violence against the minor child;

IV. Nonfulfillment of the alimony obligation for more than 90 days without a justified reason.

The spouse or concubine who lost the patria potestas because of the abandonment of his/her alimony duties may recover it, provided he/she demonstrates having fulfilled such obligation for more than one year, he/she grants an annual guarantee, an analysis of his/her financial position and current behavior has been conducted on him, as well as a psychological diagnosis. Such studies shall be conducted by the personnel assigned to the General Attorney's Office of the Federal District or by a subject matter expert, under the terms of the last paragraph of article 346 of the Code of Civil Procedures of the Federal District;

V. Due to the abandonment of the children by the father or mother for more than three months without a justified reason;

VI. When the individual exercising the patria potestas may have committed an intentional crime against the person or assets of his/her children, for which he/she has been sentenced through a final ruling;

Luis Rey Ballesteros López
Perito Traductor Autorizado por el H.
Tribunal Superior de Justicia del D.F.
Certified Translator

SECRETARIA DE RELACIONES EXTERIORES
DIRECCIÓN GENERAL DE PROTECCIÓN
A MEXICANOS EN EL EXTERIOR

VII. When the individual exercising it is sentenced two or more times for intentional crimes entailing imprisonment in excess of five years;

VIII. Due to the unjustified nonfulfillment of the judicial determinations that may have been ordered to the individual exercising the patria potestas, aimed at correcting acts of family violence, when these have affected their descendants; and

IX. When the minor child has been unlawfully removed or retained by the individual exercising it.

Article 444 Bis.- The patria potestas may be limited in the cases of divorce or separation, taking into account the provisions in this Code.

Article 445.- When the individuals exercising the patria potestas remarry, they shall not lose because of this act the rights and obligations inherent to the patria potestas, nor the spouse or concubine with whom he/she unites shall exercise the patria potestas over the children of the previous union.

Article 447. The patria potestas is suspended:

I. Due to judicially declared incapacity;

II. Due to formally declared absence;

III.- When the use of alcohol, the habit of gambling, the non-therapeutic use of unlawful substances referred to in the General Health Law and of the lawful ones not allocated for such use, which produce psychotropic effects that threaten to cause any damage whatsoever to the minor child;

IV. Due to a condemnatory judgment imposing this suspension as a penalty.

V. When there is a possibility to imperil the health, emotional condition or even the life of the minor descendants by the individual holding legal custody or a relative by consanguinity or affinity up to the fourth degree.

VI.- For not allowing to carry out the visitation decreed by a competent authority or in an agreement judicially approved, except for the provisions in section IX of article 444 of this Code; and

VII.- In the cases and for the time of duration of the guardianship of the minor children deprived of parental care, according to the provisions in this Code and in article 902 of the Code of Civil Procedures for the Federal District.

Article 448. The patria potestas is non-waivable but those to whom it corresponds to exercise it may excuse themselves:

I. When they reach the age of sixty.

II. When due to their usual bad health they cannot duly perform it.

Luis Rey Ballesteros López
Perito Traductor Autorizado por el H.
Tribunal Superior de Justicia del D.F.
Certified Translator

The undersigned, Luis Rey Ballesteros Lopez, Certified Translator authorized by the Honorable Supreme Court of Justice of Mexico City, Federal District, through Resolution 14-30/2013, and listed at http://www.tejdf.gob.mx/work/models/TEJ/PDFs/peritos.pdf page 32) issued by the Plenary

SECRETARIA DE RELACIONES EXTERIORES
DIRECCION GENERAL DE PROTECCION
A MEXICANOS EN EL EXTERIOR

Luis Rey Ballesteros López
Perito Traductor Autorizado por el H.
Tribunal Superior de Justicia del D.F.
*Certified Translator*

Meeting of the Judiciary Council of the Federal District and published in the Judicial Bulletin on August 7th, 2013, hereby certify, to the best of my knowledge and belief, that the above translation from Spanish into English is true and complete.

Mexico City, Federal District, as of March 2015

SECRETARIA DE RELACIONES EXTERIORES
DIRECCION GENERAL DE PROTECCION
A MEXICANOS EN EL EXTERIOR